SIMON GRATZ'S EXECUTORS AND OTHERS, APPELLANTS, v. SAMUEL M. COHEN AND ELEAZER L. COHEN.

Where a deed was executed by an aged woman, the sole surviving executrix of her father, with power under the will to sell, with a view to put an end to a long family litigation in which some judgments had been obtained, and other suits were then existing, and who owned the whole or nearly the whole of the residuary interest of the estate; and the settlement was made with deliberation, and under advice of business friends, and the consideration of the deed was a sum of money in hand, with a stipulation on the part of the grantee, that he would pay over any surplus which the lands might yield after paying all reasonable expenses and legal claims, — this deed cannot be set aside on the ground of fraud.

The bill below must be dismissed, unless it be so amended as to include all the parties interested, and be confined to a claim for the surplus of the proceeds of the lands, after paying reasonable expenses and legal claims.

THIS was an appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania, sitting as a court of equity.

It was a bill filed in 1839, by Samuel and Eleazer L. Cohen, citizens of the State of New Jersey, against Simon Gratz, Leah Phillips, and twelve other persons. It was a bill for a discovery against Leah Phillips, surviving executrix of Joseph Simon deceased, and Simon Gratz, and praying also that a certain agreement and deeds executed by and between said Leah and Simon might be annulled, and declared fraudulent and void, and that Simon Gratz be decreed to account, &c.

The bill involved the consideration of matters and accounts, commencing in 1769, and continuing down to the time when it was filed. It was a family dispute which had been carried on in the courts of Pennsylvania for a number of years, and reported as follows: — Gratz v. Phillips, 1 Binney, 588 (1809); Gratz v. Simon, 3 Binney, 474 (1811); Gratz v. Simon, 5

Binney, 564 (1813) ; Gratz *v.* Phillips, 14 Serg. & Rawle, 144 (1827); Gratz *v.* Phillips et al., 1 Pa. Rep. 333 (1831); Gratz *v.* Phillips, 2 Pa. Rep. 410 (1831) ; Simon's Executors *v.* Gratz, 2 Pa. Rep. 412 (1831); Cohen's Appeal, 2 Watts, 175 (1834).

This narrative need not go further back than 1804, when Joseph Simon, a merchant or trader, and resident of Lancaster, died. Besides other children, whose interests were not involved in this controversy, he had three daughters, Miriam, Beliah, and Leah. They were all married. Miriam was married to Michael Gratz, Beliah to Solomon M. Cohen, and Leah to Levi Phillips. Simon Gratz, whose executors were the appellants, was one of the children of Miriam and Michael Gratz. The complainants below and appellees here, were the children of Beliah Cohen. At the time of Mr. Simon's death, there were unsettled partnership transactions between him and his son-in-law Michael Gratz, and a large body of lands was held by them in common. Suits were then pending between them relative to these transactions.

By the will of Joseph Simon, 26th October, 1799, he disposed of the bulk of his estate as follows:

Art. 14. He ordered and directed that the whole residue of his estate (to be invested in certain stocks) should be divided into three equal shares, and one part of the proceeds thereof, that is the interest, should be paid to his daughter Miriam during her life ; one third part of the proceeds or interest thereof to his son-in-law Levi Phillips and Leah his wife, during their joint lives and the life of the survivor of them ; and the remaining third part to his daughter Beliah during her life.

On the death of either daughter, her share of the principal to vest in her issue, to take as purchasers and tenants in common. On the death of either Miriam or Leah without issue, the share to be divided among the children of Beliah Cohen.

By Art. 16, Mr. Simon made the devise to Mrs. Gratz (Miriam) dependent on a release of certain lawsuits then pending, and in the event of no such release he gave her share to Mrs. Cohen and Mrs. Phillips.

Of this will, he made his son-in-law Levi Phillips, and his daughters Mrs. Phillips and Mrs. Cohen, executors, with full power to sell real as well as personal estate.

By a codicil in December, 1802, he expressly revoked the devise to Mrs. Gratz, and directed the devise to Mrs. Phillips to be absolutely one half of the principal of the residue; the legacy to Mrs. Cohen to be as before, — the interest on her share.

By a second codicil, 9th February, 1803, he provided as follows : —

" Whereas, my son-in-law Levi Phillips has continually in-

formed me that, when I had made the last codicil in my last will and testament, I ought also at the same time to have made the alteration by giving my daughter Beliah her share in the principal, instead of the interest of the principal of my residue, which would make her more comfortable; therefore I do, by this instrument of writing, authorize and give full power to my son-in-law, Levi Phillips, as being one of my executors and guardians of my last will and testament, to do as he thinks requisite, — that is to say, by giving my said daughter Beliah her share of my residue in the principal as the money comes to hand.

"In witness whereof, I, Joseph Simon, have this day set my hand and seal.

"JOSEPH SIMON.

"*Lancaster, February* 9, 1803."

Levi Phillips, Leah Phillips, and Beliah Cohen all acted as executors.

In 1807, Michael Gratz brought a suit against the executors, and from that time the parties were continually in some court.

After the death of Simon, his executors proceeded to sell and dispose of his lands, from time to time, under the powers vested in them. In a large number of these tracts of land, Michael Gratz was interested, by virtue of a declaration of trust given by Simon in his lifetime, and of claims of David Franks (a former partner of Simon), which had been transferred to Michael Gratz; Simon Gratz was the agent of Michael Gratz in his lifetime, and his chief acting administrator after his death.

In September, 1811, Michael Gratz died, and although letters of administration were granted to Simon in conjunction with other persons, yet he was the chief acting administrator, and appeared to transact all the business.

It is not necessary to trace the progress of the various suits mentioned in the commencement of this narrative. In 1832, Levi Phillips died, and on the 29th of January, 1833, Beliah Cohen died, leaving Leah Phillips the sole surviving executrix of her father, Joseph Simon.

On the 15th of February, 1833, the agreement was entered into between Leah Phillips and Simon Gratz, which it was the object of this bill to set aside as fraudulent.

The circumstances attending the making of this agreement are thus stated in the bill : —

"Your orators further show unto your honors, that Solomon M. Cohen, their father, died in the month of February, 1796, and that Beliah Cohen, their mother, died on the 29th day of

January, 1833, and that they, and their brothers and sisters heretofore named, are the persons mentioned as the children of his daughter Beliah in the last will and testament of Joseph Simon; that the papers of the estate of the said Joseph Simon were in the possession of Levi Phillips at the time of his death; that the said Levi Phillips died on the 15th day of January, 1832, and that after his death the papers of the said estate were in the possession of the said Leah Phillips, one of the executors of the said Joseph Simon; that during the year 1832, secret interviews took place between Simon Gratz and Leah Phillips, executrix, citizens of the Commonwealth of Pennsylvania, with the view of depriving your orators, and the other children of the said Beliah Cohen, of their just rights under the will of the said Joseph Simon, which said interviews were concealed from the said Beliah Cohen and her family; and your orators believe, and expressly charge, that John Moss, Isaac Phillips, Lyon J. Levy, and Isaac B. Phillips, citizens of the Commonwealth of Pennsylvania, were, during that year and afterwards, aiding and assisting the said Simon Gratz and Leah Phillips in their design to appropriate the estate of the said Joseph Simon to the said Simon Gratz and Leah Phillips, and deprive your orators, and their brothers and sisters, of the said estate and of their just rights. That shortly after the decease of their mother a fraudulent agreement was made and entered into between Simon Gratz and Leah Phillips, dated February 15th, 1833, a copy whereof, marked H, is hereto annexed, and which your orators pray may be taken as part of their bill; the object of which said agreement was fraudulently to terminate the suits then pending between the surviving executrix of the said Joseph Simon and the administrators of Michael Gratz, by agreeing, consenting to, and causing judgments to be taken against the estate of the said Joseph Simon, to the manifest injury of your orators, and their brothers and sisters hereinbefore named, interested as aforesaid in the said estate; and the further object, purpose, and intention of the said agreement was fraudulently to convey, or cause to be conveyed, to the said Simon Gratz all the real estate of the said Joseph Simon, which said real estate is more particularly set forth in a schedule hereto annexed, marked L, for a consideration entirely inadequate, and known so to be by the said Simon Gratz and Leah Phillips, and to transfer, without an adequate consideration, to the said Simon Gratz the debts due to the estate of the said Joseph Simon; and that the said Leah Phillips and Simon Gratz, then well knowing the unjust and fraudulent character of said agreement and the inadequacy of the consideration, did combine and con-

federate with others, their confederates, to defraud your orators, and their brothers and sisters, of their just interest in the estate of the said Joseph Simon. And your orators further show to your honors, that the said agreement was concealed from your orators and the other children of the said Beliah Cohen, and was first discovered by them on the 13th day of June, 1833, it having been produced on that day by Lyon J. Levy, one of the confederates, in an examination of the said Lyon J. Levy, as a witness before Michael W. Ash, Esquire, an alderman of the city of Philadelphia, the said Lyon J. Levy having been subpœnaed for the purpose of having his deposition taken in a case then pending in the Orphan's Court of Lancaster County; that the first knowledge your orators, and, as they verily believe, any of the children of the said Beliah Cohen, had of an arrangement having been made between Simon Gratz and Leah Phillips, was obtained by one of their brothers, Joseph S. Cohen, who, on the 23d day of March, 1833, was informed by Benjamin Champneys, Esquire, who had been and was counsel for the estate of Joseph Simon, that he, the said Benjamin Champneys, had received from Leah Phillips a power or warrant of attorney to enter judgment for the plaintiffs in a suit then pending, and on the argument list of the Court of Common Pleas of Lancaster County, between Gratz's Administrators, plaintiffs, and Simon's Executors, defendants, the copy of the record whereof is hereunto annexed. That the said Benjamin Champneys refused to show the said power or warrant to the said Joseph S. Cohen; that on the morning of the 25th of March, 1833, the day fixed for hearing arguments in the said Court of Common Pleas of Lancaster County, the said Joseph S. Cohen attended with his counsel, James Hopkins, Esquire, and Reah Frazer, Esquire, at the opening of the court, and filed the affidavit, a copy whereof, marked I, is hereto annexed; and on motion of Mr. Hopkins, the said court, after considerable resistance on the part of John R. Montgomery and William Morris, Esquires, counsel of Simon Gratz, granted a rule to show cause why Sarah M. Cohen and others, children of the said Beliah Cohen, and interested in the estate of the said Joseph Simon, should not be permitted to come in and take defence in the said action, as appears by the said rule, a copy whereof is hereto annexed, marked J, which raid rule was duly served on the said Leah Phillips, surviving executrix.

"Your orators further show to your honors, that in pursuance of the said fraudulent and secret agreement, dated the 15th day of February, 1833, entered into between the said Leah Phillips and Simon Gratz at the instance of the said John Moss, Lyon

1 *

J. Levy, and others, their confederates, who, when discovered, your orators pray may be made parties to this their bill, with apt and sufficient words to charge them; the said Leah Phillips, surviving executrix as aforesaid, afterwards delivered to the said Lyon J. Levy the books and papers belonging to the estate of the said Joseph Simon," &c.

The answer of Leah Phillips to this part of the bill was as follows:—

" And this defendant further answering saith, that in the year 1832, she being of a very advanced age, being then in her sixty-ninth year, of infirm health, almost totally blind, and in very necessitous circumstances, was determined by the advice of her friends, Isaac B. Phillips, John Moss, and Lyon J. Levy, to make a settlement of long pending controversies between the estate of Joseph Simon, of which she was the surviving representative, and of Michael Gratz, which she believed to be represented by the said Simon Gratz, and also to make sale of such lands vested in her under the will of said Joseph Simon as the said Simon Gratz might be willing to purchase. The defendant says, that her object in proposing the arrangement was to terminate controversies which she was unwilling and unable to carry on, and to obtain such a sum of money as would relieve her from embarrassment, which gave her great uneasiness; the said defendant then and still believes, that in making this arrangement she prejudiced the rights of no one, but did what the law gave her perfect authority to do; and this defendant answering says, that in the month of October, 1832, she addressed several notes to said Simon Gratz, desiring to confer with him on the proposed arrangement and purchase, and that she had several interviews with him at her own house, and at his counting-house, and that she entered into an agreement with him, the said Simon Gratz, in order to terminate the pending suits above referred to, and made a conveyance of certain lands to the said Simon Gratz, receiving therefor the sum of fifteen hundred dollars, which was duly paid on and after the execution of the said conveyance and agreement.

" And this defendant further answering saith, that, with a view to carry such conveyance into full effect, she deposited with Lyon J. Levy a trunk of papers, being the same which Joseph S. Cohen had as aforesaid fully examined, and from which he had selected certain papers in order that the said Simon Gratz should examine the same, and take therefrom such papers as muniments of title as might be necessary to carry into full effect the said conveyance; that after the said

trunk had remained some time in the said Levy's possession, it was returned, and is now in the defendant's possession.

"And this defendant further answering saith, that she admits it to be true that Levi Phillips, one of the executors of Joseph Simon, did die on or about the 15th of January, 1832, and that Beliah Cohen, an executrix of Joseph Simon, did depart this life on or about the 29th day of January, 1833.

"And the defendant further answering saith, that there were no other negotiations between this defendant and Simon Gratz, during the life of Beliah Cohen or afterwards, than those already stated; that they had for their object the final termination of controversies between the estate of Michael Gratz and that of Joseph Simon, which this defendant was neither able nor willing to continue, and the conveyance of certain lands for an adequate consideration to be paid by the said Simon Gratz to this defendant as above stated.

"That the negotiations between this defendant and the said Simon Gratz were verbal, and took place partially at his counting-house and partially at her house; that this defendant is unable, at this time, more precisely to state what conversation passed between her and the said Simon Gratz, nor has she copies of any papers which were executed; that there were executed an agreement for the termination of certain pending suits, and two deeds of certain lands in Columbia and Lancaster Counties; that no persons took part in such negotiations but herself and Simon Gratz, and that these negotiations were not concealed from Beliah Cohen or her children.

"And the defendant further answering saith, that Simon Gratz did call on this defendant at her house, in Arch Street, on two occasions, once at the time of the execution of the deeds, and once previously, though the precise period of the first call this defendant is unable to state; that this first call was not made in consequence of any previous notice; that Elkalah M. Cohen was at this defendant's house when Simon Gratz called; that Simon Gratz did not then disclose the object of his call; that he did not state he was not aware that this defendant resided there; that she had not before called there, and this defendant is not aware from whom he received information where she resided.

"And this defendant further answering saith, that there were other interviews between the defendant and Simon Gratz, but whether there were more than two, and whether they occurred before or after the death of Mrs. Beliah Cohen, this defendant is unable to state; this defendant had several interviews with Simon Gratz at his counting-house, and the object of this defendant in going to Mr. Gratz's counting-house was to relieve

him of as much trouble as possible, in a matter in which this defendant then believed, and still believes, he was doing her a kindness.

"And this defendant further answering saith, that she has no recollection of ever stating to Elkalah M. Cohen, when Simon Gratz called on her, that she, the defendant, had no idea of seeing Simon Gratz, and was as much surprised at his calling on her as Miss Cohen could possibly be; nor has she any recollection of any private interview between herself and John Moss, at any time when Elkalah M. Cohen was at this defendant's; nor is she able to say how soon after the death of Beliah Cohen this defendant had an interview with Simon Gratz; nor more particularly to state what passed at that or any other interview than she has already stated.

"And this defendant further answering saith, that five hundred and fifty dollars, part of the consideration of the said agreement and conveyance, were paid to this defendant by L. J. Levy and the rest by Simon Gratz; and that the total amount of said consideration was agreed upon by and between this defendant and Simon Gratz; and that there was no other consideration of the same than the said sum of fifteen hundred dollars," &c.

The agreement itself thus entered into was as follows:—

"Acts to be performed by Mrs. Leah Phillips, surviving executrix of Joseph Simon, deceased:—

"1. To execute deed for Michael Gratz's interest in unsold lands.

"2. To direct her attorney in suit, (in the Court of Common Pleas of Lancaster County, of January term, 1822,) No. 163, — Simon Gratz, Joseph Gratz, and Jacob Gratz, Administrators of Michael Gratz, deceased, v. Levi Phillips, Leah Phillips, and Beliah Cohen, Executors of Joseph Simon, deceased. — Amicable action, August term, 1822, award of referees in favor of plaintiffs for $ 2,967.34, — to bring up the case on agreement, then permit the exceptions to be overruled, and the award affirmed.

"3. To settle the sum due on the sale of house and lots in Carlisle, in judgment in Supreme Court, which shall be submitted to the auditors to report thereon.

"4. In the suit, Levi Phillips, Leah Phillips, and Beliah Cohen, Executors of Joseph Simon, deceased, v. Simon Gratz, Joseph Gratz, and Jacob Gratz, Administrators of Michael Gratz, deceased. — In the court of Lancaster County, September term, 1828. No. 2. — Mrs. Phillips and her attorney to direct discontinuance of the action.

" 5. To transfer all her interest in the estate of Joseph Simon to Simon Gratz for the sum of $    (this blank amount to be fixed) ; if the product of this shall produce a sum exceeding the amount of the above judgments, and the sum to be paid as a consideration, then the excess to be paid over to Mrs. Leah Phillips.

" The blank to be filled up with fifteen hundred dollars ; five hundred dollars in hand, five hundred dollars in one year, and five hundred dollars in two years.

" S. GRATZ.

" *February* 15, 1833."

In the subsequent part of 1833, when the heirs of Beliah Cohen acquired a knowledge of this transaction, they applied to the State court in the county where the letters testamentary of J. Simon's estate had been granted, to dismiss Mrs. Phillips from her trust as executrix. But the court refused to do so, and she continued to be executrix as long as she lived.

In January, 1839, as has been already stated, the complainants filed their bill. They were two of the children and heirs of Beliah Cohen ; the other children were citizens of Pennsylvania, and were made defendants.

After the filing of the bill, but before answer, Simon Gratz died, and after putting in her answer, Leah Phillips died also ; and their respective representatives were made parties by bills of revivor.

The bill claimed to set aside the agreement and the deeds made to Simon Gratz, or, if the court would not grant them that remedy because the lands had passed into the hands of *bonâ fide* purchasers from Gratz, then that Gratz should be decreed to account for the value of them. The agreement and the deeds made in pursuance of it were alleged to be fraudulent on two grounds ; —

1st. As between the parties themselves, because advantage was taken of the necessities, weakness, and ignorance of an old woman, to obtain a transfer of the whole estate confided to her charge, for a consideration wholly inadequate, upon an agreement approved by her friends, to sell no more than her own interest.

2d. As against the children of Beliah Cohen, because the purchaser colluded with the executrix or trustee in making a fraudulent application of the trust property to her own use, and to pay a judgment in favor of the purchaser, to the payment of which the complainants and their property were not bound to contribute.

The defendants all having answered, and a general replica-

tion having been filed, much evidence was taken upon points which it is not necessary to specify. Amongst other proceedings was an issue at law to determine the value of the lands.

In October, 1847, the cause came on for argument before the Circuit Court, which decreed in favor of the complainants, and that the executors of Simon Gratz should pay to the children of Beliah Cohen the one half of what Gratz had sold the lands for, and convey a moiety of the unsold part. Reference was made to a master to state an account, &c. Exceptions were taken to the report of the master, some of which were sustained and others overruled. The final decree of the court was as follows : —

"That the said Louisa Gratz, Edward Gratz, David Gratz, and Isaac Prince, executors of the last will and testament of Simon Gratz, deceased, do account and pay to Samuel M. Cohen, Eleazer L. Cohen, Sarah M. Cohen, Rachel M. Cohen, Elkalah M. Cohen, Abraham M. Cohen, Joseph S. Cohen, and Joseph S. Cohen, administrator of Rebecca M. Cohen, deceased, children of Beliah Cohen, deceased, the sum of $9,415.29, with interest thereon from October 14, 1847, and costs ; and that the said executors shall convey, by proper and sufficient assurances in law, the one moiety of the interest of Joseph Simon in all that certain tract of land designated in the deed of the 3d of April, 1833, from Leah Phillips to Simon Gratz by the warranty name of Samuel Laird.

"Master's costs, $100, to follow the decree. Order for payment accordingly, 29th January, 1848."

The defendants appealed to this court.

The cause was argued by *Mr. Reed* and *Mr. Clarkson*, for the appellants, and *Mr. Dallas* and *Mr. Budd*, for the appellees.

The counsel for the appellants made the following points : —

I. There is no such evidence of fraud on the part either of the executrix, Mrs. Phillips, in making the sale of the lands, or of Mr. Gratz in purchasing, as will authorize the rescission of the contract.

II. The appellees, children of Mrs. Cohen, are in no way injured by the agreement between Mr. Gratz and Mrs. Phillips, their interest either as heirs of their mother, or under the will of Mr. Simon, being more than absorbed by the judgment of $7,916, and the debt of Mrs. Cohen ($6,500) as executrix to her father's estate.

III. That Beliah Cohen, under the last codicil to Joseph Simon's will, took an absolute estate, and not an estate for life, and Levi Phillips was a trustee for her. Such is the plain

meaning of the words of the codicil. "A power which, by the will, the party is required to execute as a duty, makes him a trustee for the exercise of it, and allows no discretion whether he will exercise it or not. The court adopts the principle as to trusts, and will not permit his negligence, accident, or other circumstances to disappoint the interest of those for whose benefit he is to execute it." Brown *v.* Higgs, 8 Ves. 574; 1 Story's Equity, § 98; 2 Ib. § 1068; Lindenberger *v.* Matlack, 4 Wash. C. C. R. 278; Coates's Appeal, 2 Barr, Penn. State Rep. 129. If Beliah Cohen had an absolute estate, then debts and judgments against her bound it, and the learned judge erred in saying that was a misapplication of trust funds. It was an application of funds not belonging to Beliah Cohen's children.

IV. The proceeds of the lands which the appellees seek to recover, if they exceeded the amount of the judgment referred to in the acts to be performed, are liable to a claim on the part of the representatives of Mrs. Phillips, if to any body. The appellees do not claim under her.

V. This is a stale demand for the interference of a court of equity, which will not be favored. In 1833, when this alleged fraud was discovered, and the plaintiffs below sought redress in the State courts, Simon Gratz, the only individual acquainted with the details of these perplexed transactions, was in full life and vigor. In 1839, when the bill was filed, he was on his death-bed, and died in July, 1839. For five years and eleven months the plaintiffs slept on their rights. In a month the statute of Pennsylvania would have barred the claim by express limitation. Where an application is made for the interposition of this court, and there has been laches, it is not necessary that the actual limitation fixed by the statute should apply. This is well settled. Cholmondeley *v.* Clinton, 2 Jac. & Walk. 141 : "At all times courts of equity have, upon general principles of their own, even where there was no statutable bar, refused relief to stale demands where the party has slept upon his rights"; cited with approval, Miller *v.* M'Intyre, 6 Peters, 66. It is a simple question, says Judge McLean, "Has the party slept on his rights?" Coalson *v.* Walton, 9 Peters, 83.

The doctrine that lapse of time may be used as a defence in equity, is far more favored than formerly. When the party is dead, probably his clerks and agents also dead, there being no one who can give any explanation of a paper, or show how it was prepared, and under what circumstances, this doctrine is especially favored. White *v.* Parnther, 1 Knapp (Privy Council), 226.

It is a most important element where a party sought to be affected has been allowed to die, and executors are made parties who have no knowledge of the original transaction. Ellison *v.* Moffat, 1 Johns. Ch. 47.

This doctrine is applicable to cases where fraud is charged; Prescott *v.* Hubbell, 1 Hill, Ch. 213; and this where the party charged is considered, as in this case, a trustee by operation of law, though it might not be as between a direct trustee and his *cestui que trust.* Decouche *v.* Savetier, 3 Johns. Ch. 190. Where a party is chargeable with laches to the extent of the statute of limitations, he must state in his bill that the discovery of the fraud was within the limitation. 1 Hill, Ch. 214.

In Carr *v.* Chapman, 5 Leigh, 185, Lord Camden's doctrine in Smith *v.* Clay, 3 Bro. Ch. 640, was cited with approval: " Nothing can call this court into action but conscience, good faith, and reasonable diligence; when this is wanting, this court is always passive "; and it is on these principles courts of equity, though they have adopted, are not tied down by, statutes of limitation. A shorter period of time, accompanied by gross negligence and acts of abandonment by those having an interest and competent to assert their rights, will bring their case within Lord Camden's principles. If the court saw that it was called on to do injustice, it would not move, however strong in point of original right the claim might be. So in Wagner *v.* Baird, 7 Howard, 234; and Bowman *v.* Wathen, 1 Howard, 189.

In McKnight *v.* Taylor, 1 Howard, 168, the statute of limitations was, as here, within a few months of coming into operation, yet plaintiffs were concluded by laches; there must be reasonable diligence to call into action the power of this court. There is difficulty which the law recognizes in doing justice, when the original transaction has become obscure and evidence may be lost.

To the same effect are Piatt *v.* Vattier, 9 Peters, 416, and Philips *v.* Belden, 2 Edw. 1. Equity gives effect to relatively short lapse of time, discouraging claims not promptly made, especially where there is no personal disability or other impediment.

No court has been more emphatic in its language favoring lapse of time than this court. Prevost *v.* Gratz, 6 Wheaton, 481: " Length of time necessarily obscures all human evidence, and it thus removes from the parties all immediate means to verify the nature of the original transaction; it operates by way of presumption in favor of innocence and against any imputation of fraud. Fraud or breach of trust ought not to be lightly imputed to the living, for the legal presumption is the other

way; and as to the dead, who are not here to answer for themselves, it would be the height of injustice and cruelty to disturb their ashes and violate the sanctity of the grave, unless the evidence be clear beyond a reasonable doubt." Also to the same effect, and that laches or lapse of time may be resorted to as a defence on the evidence without being pleaded, Giles v. Baremore, 5 Johns. Ch. 550; Baker v. Biddle, 1 Baldwin, 417.

For the general doctrine as to stale demands in equity, and the effect of parties not promptly asserting their rights, see Salsbury v. Bagott, 2 Swanst. 613; Beckford v. Wade, 17 Ves. 97; Andrew v. Wrigley, 4 Bro. Ch. 125; Brown v. Deloraine, 3 Bro. Ch. 639; Hovenden v. Annesley, 2 Sch. & Lef. 629; Hercy v. Dinwoody, 4 Bro. Ch. 268; Wych v. East India Co., 3 P. Wms. 309; Pickering v. Lord Stamford, 2 Ves. 582; Christophers v. Sparke, 2 Jac. & Walk. 223.

As a rule, the statute of limitations does not operate in cases of trust or fraud, but as soon as fraud is discovered it begins to rise. Wamberzee v. Kennedy, 4 Desaus. 479.

In Veazie v. Williams, 3 Story, 629, there were five years and a half between the sale alleged to be fraudulent and the filing of the bill to avoid it, and the court held the lapse of time to be a bar, because by time the evidence as to the original transaction had been obscured. A court of equity should never be active in granting relief where the circumstances are of such a nature as that it may become the instrument of as much injustice as it seeks to redress. To the same effect, Gould v. Gould, 3 Story, 516.

The circumstances from which the laches in this case are deduced are very flagrant. Five years and eleven months were allowed to elapse after the discovery of the alleged fraud.

If the judgment of $7,916, in favor of Gratz's Administrators v. Simon's Executors, was a lien on the real estate, the Cohens waited till that lien had expired, which it did in five years, or 1838. They never charged a fraud whilst Simon Gratz was in life and health.

The first allegation of the plaintiffs is in J. S. Cohen's affidavit at Lancaster, 25th March, 1833, within a month of the date of the agreement. In this there is no averment of fraud in either Leah Phillips or Simon Gratz. The most is an implication of such fraud.

In the letter of the Cohen family to the administrator of Michael Gratz, dated 29th March, 1833, the same guarded and doubtful phraseology is used, but there is no averment of fraud. So in the affidavit of 8th April, 1833.

In the affidavit of J. S. Cohen, of 29th July, 1833, no fraud is charged, the strongest word being "collusion."

No averment of fraud was made till this bill was filed in January, 1839; and then, as above stated, Simon Gratz was ill, and he died before his answer could be prepared. It will be remembered that the insinuations of collusion in these affidavits were promptly met by counter-affidavits from Leah Phillips, to which, as well as to her answer, the court are particularly referred.

Of this gross laches of nearly six years, the learned judge took no other notice than in saying, that it was to be lamented that Mr. Gratz died before his answer was prepared. In this omission it is submitted that he erred. The deposition of Mr. Gratz is no equivalent to an answer to the various and specific allegations of the plaintiffs' bill.

Had the plaintiffs interposed at once on the discovery of the imputed fraud, or at any time short of six years, or for five years and eleven months, the lands would not have been sold. The plaintiffs lay by till the lien of the judgment was gone, and the lands disposed of at great trouble and by great effort, for it is manifest that nothing but the greatest exertion and constant supervision by Mr. Gratz and his agents could have disposed of them to even moderate advantage.

The argument of the counsel for the appellees consisted chiefly in an examination of the evidence, to show that the decree of the Circuit Court was correct. A great part of this testimony has been necessarily omitted in the statement of the case, and the argument drawn from it cannot therefore be condensed. The authorities cited by the counsel were the following.

Simon Gratz was not a *bonâ fide* purchaser without notice of his grantor's breach of trust, and his representatives were rightfully decreed by the court to be trustees for the benefit of the Cohens, and charged with the value of the lands so wrongfully obtained.

"Courts of equity will decree a trust *in invitum* against a party who purchases trust property in violation of the objects of the trust, and will force the trust upon the conscience of the guilty party, and compel him to hold the property subject to it in the same manner as the trustees held it." 1 Story's Equity, 395 – 405.

Scott *v.* Tyler, 2 Dickens, 725: "If one concerts with an executor or legatees, by obtaining the testator's effects at a nominal price, or at a fraudulent undervalue, or by applying the real estate to the purchase of other subjects for his own behoof, or in extinguishing the private debt of the executor, or in any other manner, contrary to the duty of the office of the executor,

such concert will involve the seeming purchaser, or his pawnee, and make him liable for the full value." 2 Story's Equity, § 1257.

Hill v. Simpson, 7 Ves. jr. 152: "Transfer by an executor, a clear misapplication of assets immediately after the death, to secure a debt of the executor and future advances, under circumstances of gross negligence, though not direct fraud, set aside by general legatees."

M'Leod v. Drummond, 17 Ves. jr. 169. Lord Eldon concurs in the opinion expressed by the Master of the Rolls, in Hill v. Simpson, that a general pecuniary or residuary legatee had the right to follow the assets. 1 Story's Equity, 424.

Wormley v. Wormley, 8 Wheat. 421: "Wherever the purchaser is affected with notice of facts, which in law constitute a breach of trust, the sale is void as to him, and a mere general denial of all knowledge of fraud will not avail him, if the transaction is such as a court of equity cannot sanction." See also Mechanics' Bank v. Seaton, 1 Peters, 309.

The appellants' allegation of laches is not sustained by the evidence, nor do their authorities justify the use to which they are applied. A comparison between the facts of this case and those of the decisions referred to, will show that the lapse of time which prevented the interposition of courts of equity far exceeded that which is here the ground of complaint, and did not admit of the explanations which excuse the comparatively brief delay in the complainants in seeking a redress for their wrongs in a federal court.

An examination of the following leading cases, cited by the appellants, will show what the courts have considered as stale claims.

In Prevost v. Gratz, 6 Wheat. 481, it was determined that the lapse of forty years, and the death of all the original parties, was sufficient to presume the discharge and extinguishment of a trust proved once to have existed by strong circumstances. This was in analogy to the rule of law, which, after a lapse of time, presumes the payment of a debt, surrender of a deed, and extinguishment of a trust.

Cholmondeley v. Clinton, 2 Jac. & Walk. 1. It was held that laches and non-claim by the owner of an equitable estate, under no disability, for *twenty years*, where there has been no fraud, will constitute a bar to equitable relief, by analogy to the statute of limitations.

Miller v. M'Intyre, 6 Peters, 65. "At least *twenty-six years*," says Judge McLean, "elapsed after the adverse possession was taken by the defendants, before suit was brought against them by the complainants, and *nineteen* years from the decease of their ancestors."

Coulson v. Walton, 9 Peters, 63. Notwithstanding a delay of more than *thirty years* in the institution of the suit, the court did not consider that lapse of time, under the circumstances of the case, should operate against the right set up by the complainants to have the specific execution of a contract decreed.

Baker v. Biddle, 1 Baldwin, 419. " The act of limitation," says Judge Baldwin, " has twice run over the plaintiff's claim, and, being barred at law, we can see no equitable circumstances to take it out of the rule."

Piatt v. Vattier, 9 Peters, 416. " There has been," say the court, " a clear adverse possession of thirty years without the acknowledgment of any equity or trust estate in Bartle, and no circumstances are stated in the bill, or shown in evidence, which overcome the decisive influence of such an adverse possession."

M'Knight v. Taylor, 1 Howard, 167. " In relation to this claim," says Chief Justice Taney, " it appears that *nineteen years and three months* were suffered to elapse, before any application was made for the execution of the trust by which it had been secured. No reason is assigned for this delay; nor is it alleged to have been occasioned in any degree by obstacles thrown in the way of the appellant. As the record stands, it would seem to have been the result of mere negligence and laches."

Gould v. Gould, 3 Story, 516. The delay was for nineteen years.

Veazie v. Williams, 3 Story, 631, has no analogy to the present case, and was reversed in 8 Howard, 134; there was no fraud imputed to the defendants, and the plaintiff, says Judge Story, (pp. 631, 632,) " is not now at liberty to shift his own loss upon the defendants, or to make them responsible for the misdeeds of Head, to which they were not parties, and whom the plaintiff has been content to release from all responsibility."

Mr. Justice WOODBURY delivered the opinion of the court.

In this case, the plaintiffs in the court below, as children of Solomon and Beliah Cohen, and grandchildren of Joseph Simon, claimed an interest in certain lands which had been conveyed to Simon Gratz by Mrs. Phillips, the surviving executrix of Joseph Simon.

That conveyance was alleged to have been fraudulent, and the plaintiffs prayed that it be set aside, and Simon Gratz be required to account for any sales and rents of the land. The court below decreed that the conveyance was void for fraud; yet, as the lands had been bought of Gratz since by innocent

purchasers, declined to set it aside, but ordered the respondent to pay over the full value of the lands, and without any deduction for debts, advances, or expenses.

This is an appeal from that decision; and in order to determine whether evidence enough exists to show that fraud was practised by either of the parties to the conveyance, as it is charged on both of them, it will be necessary to ascertain how the lands were situated, and the relation to them in which the grantor and grantee, as well as the plaintiffs, then stood.

Some time prior to 1804, Joseph Simon and Michael Gratz purchased in partnership large tracts of land in Pennsylvania, the title deeds running to the former alone, under an agreement to account to the latter for half the proceeds. As sales of them were made from time to time, difficulties and litigation arose between them as to the proceeds, extending even to eight reported cases in the courts of Pennsylvania, and all of which appear to have been decided against Simon.

He complained much that Gratz had obtained from him more than he was entitled to. Accordingly, when Simon made his will and died in 1804, he forbade, by the last codicil, any portion of his estate going to Michael Gratz or his wife Miriam, who was the daughter of Simon, and did not make either of them executors on his estate. But he appointed Levi Phillips and wife, the latter being another daughter, and Mrs. Cohen, a third daughter, executors. At first he bequeathed one third of the income of the residue of his estate to each daughter, but by the codicil increased Mrs. Phillips's and Mrs. Cohen's share each to one half of the principal, and, withdrawing Mrs. Gratz's share, empowered Levi Phillips to give to Mrs. Cohen the principal rather than the interest, or income. At the death of either daughter, her share was to vest in her children, as tenants in common. He gave to his executors, and the survivors of them, full power to sell his real, as well as personal estate.

Some suits between Simon and Michael Gratz in relation to their partnership property were pending at the death of the former; others were soon after brought, and others still, as sales of the land were made by the executors, and recoveries were had in some of them for portions of what Simon and they had sold. By the death of Mr. Phillips in 1832, and of Mrs. Cohen in January, 1833, Mrs. Phillips had become the sole surviving executrix, and she in February, 1833, proposed to Simon Gratz, executor of Michael Gratz, to make a final settlement of the claims on his part against the estate of Joseph Simon. At that time, Simon Gratz held unsatisfied a judgment against Levi Phillips and Mrs. Cohen, which had been recovered in 1831 for $ 7,916.73.

2 *

They had not been called "Executors of Simon" in the declaration, but the subject-matter of the action was connected with his estate, and with the proceeds of sales of the partnership lands.

There was another action pending, which was brought by Gratz's Executors against Simon's Executors, in which an award had been made to Gratz for $ 2,967, but exceptions had been taken to it, not yet acted on.

At that time, too, Mrs. Cohen had received from Simon's estate, as early as 1812, $ 1,008, which, with interest to 1833, amounted to near $ 6,500, and none of it had ever been refunded by her.

In this state of things the inquiry arises, whether, in the proposals by Mrs. Phillips, the negotiation for a settlement, and the conveyance of the lands to Gratz under the conditions and circumstances of the case, fraud is manifest so as to justify the rescinding of that conveyance, or if not, because the land is now in the hands of innocent purchasers from Gratz, to make the latter account for its whole value as if the sale to him had been void. In deciding this question, let us look first to the terms and circumstances of the agreement.

She stipulated, in relation to the suit then pending, to have the exceptions overruled, and the award confirmed for $ 2,967. She agreed further to discontinue a suit of doubtful merits pending by Simon's Executors against S. Gratz et al., Executors of Michael Gratz, and also as executrix to convey to S. Gratz all the unsold lands of the partnership, and all her own personal interest in Joseph Simon's estate. On the part of S. Gratz, he agreed to pay her $ 1,500 cash, — though nothing is said in the writing as to the release or discharge of the judgments against Joseph Simon's executors or other claims by S. Gratz; but they thus became virtually discharged, as all the remaining estate of Joseph Simon was then conveyed to S. Gratz. Nothing appears to have been said, likewise, as to the debt due from Mrs. Cohen, but probably that was deemed quite an equivalent to what remained of her share in Simon's estate; and she being dead, this was left as it had stood for twenty years.

On these leading facts, the first ground assigned to show fraud by S. Gratz is a supposed deficiency of consideration for this agreement and the conveyance. But in the family settlement it is proper to look to equitable circumstances, and not to expect all such technical formalities as prevail between strangers. The consideration actually paid in money was $ 1,500, and though Mrs. Phillips may have regarded it as for her rather than the estate of Simon, yet it made little difference, as she was the only residuary devisee of Simon surviving; and if

Mrs. Cohen had been already paid more than her share, as seems probable, this sum would virtually go to Mrs. Phillips alone, as it would first in form belong to the estate, and then to her as devisee. It was in fact also paid to her for matters connected with the estate, and while she was executrix of the estate, instead of being, as is argued, a personal bribe to her. .

Though a technical difference might exist between the executors as to their several liabilities (14 Serg. & Rawle, 152), and though different modes of proceeding might be necessary to enforce them, yet the estate of Simon was the only fund liable. The interest in the partnership lands, which belonged to Michael Gratz, was the only source of all his claims, and the parties properly looked at it in its true equitable light, through all the varnish and varieties of form, and negotiated with a view to the whole.

Thus, if one of these judgments did not describe the defendants as executors, yet the other did, and the first one was founded on the proceeds of sale by them as executors of lands, the title to which had stood in the name of Simon, though a moiety belonged to Michael Gratz, and the executors were acting in trust for Gratz as well as Simon. Now the $ 1,500 in money, and the $ 10,000 in the two judgments, with interest, were probably very near the value of the lands as situated in 1833. But to remove all doubt as to the fairness and fulness of the consideration, Simon Gratz further agreed to pay over to Mrs. Phillips any surplus the lands might yield after paying all reasonable expenses and legal claims. This cures every exception to the inadequacy of the consideration.

If the surplus, after an inquiry into the matter, and after allowing to Michael Gratz or his estate and executors all which is just, should be considerable, an administrator of Mrs. Phillips could enforce its payment on this agreement; and the administrator of Mrs. Cohen, instead of being injured or defrauded, could obtain her share, and divide it among her children, the present complainants, if she had not before her death received enough to cover this, as well as former interests or dividends.

It is next said in support of the alleged fraud, that Mrs. Phillips was an aged female, little accustomed to business, and likely to be overreached by so shrewd and capable a man as Simon Gratz. But Mrs. Phillips, though aged, is proved to have been intelligent and capable. She applied to him rather than he to her to make the settlement, and he suggested the advice and aid of her business friends rather than attempting a secret and sudden settlement. She did consult two intelligent business friends. Full time was given to make inquiries and calculations, rather than using haste. Though Mrs. Phillips

did not confer with the plaintiffs, she was not bound to consult the Cohen heirs more than others; and the contract by Simon Gratz to pay over any surplus secured any eventual interest of theirs as fully as they themselves could have done, and wisely put an end to a protracted family litigation, as expensive and ruinous as it was derogatory.

Mrs. Phillips, at her advanced age, being sole representative of Simon's estate, had a good and sufficient motive to be anxious, at the first opportunity after Mrs. Cohen's death, to close that estate up, and the lawsuits and the trusts, and was not likely to do it then, as assumed, because she could then more easily defraud. She could not then, by having the $1,500 paid to herself, deprive the plaintiffs, if she desired, of any share in it they might be entitled to. It was received on account of interests conveyed in the Simon estate.

She was both executrix with a right to sell, and a devisee with a personal interest in the estate of Simon. What she received, then, of Simon Gratz, went to her in both capacities, it being proceeds of Joseph Simon's estate, and worked no injury to Mrs. Cohen's children, as Mrs. Phillips in her character of executrix would be liable to them for their share in what Gratz paid, if they had not already, through Mrs. Cohen, obtained enough to cover this.

Too much importance has, in our view, been attached to the payment being to her, and not repeating the words " *as executrix*," and the recovery of one judgment being against the other executors, without repeating their titles. These mere descriptions, inserted or omitted, cannot, however, in chancery, change the essence of a transaction, when they had nothing to receive, or grant, or account for, except as executors of Joseph Simon, and where the whole matters in controversy are connected with lands, the title of which was nominally in him, but the beneficiary interest in part in Michael Gratz and his executors.

Again, it is urged against the validity of the conveyance, that it included some lands of Simon, in which Michael Gratz had no interest. But Mrs. Phillips, as surviving executrix, had a right under the will to sell any estate of Simon; and there was a good reason for selling the whole on this occasion, in order, at her advanced age, to close up the administration of Simon's estate, as well as to convey enough to Simon Gratz to satisfy his claims on it as executor.

He, too, could manage it better than any female, and instead of taking advantage of her, or any body she represented, he became liable to account for any surplus, if any should occur.

It is further urged, that the wishes of Joseph Simon to dis-

inherit Michael Gratz and his family were thus overcome, and are not to be trifled with.

But the inflexible will of Joseph Simon against Michael Gratz and his family having any portion of his estate was not thwarted in this way, since they received nothing as devisees or heirs, but merely purchased for a valuable consideration what any person in the community had a right to buy, and obtained in the end chiefly land which S. Gratz's ancestor owned and paid for as much as J. Simon.

In fine, we are at a loss to see any strong indications of fraud in any part of this transaction, either by S. Gratz or Mrs. Phillips; and most of what appears, at first, in some degree objectionable, seems reconciled with perfect integrity when we advert to the legal presumptions in favor of those charged with misbehavior, and to the family connection between the parties and the preponderating equities of the case.

These conclusions would not be different, whether the principal of Mrs. Cohen's share was under the last codicil to be considered as vesting in her, or only the interest of it.

Empowering an executor to make a change like that in a bequest is, however, usually regarded as expressing a wish to have it done, if it be not clearly a mere power, and to require that that be considered as done which ought to be done, if forgotten or omitted. Brown v. Higgs, 8 Ves. 574; 4 Wash. C. C. 278; 1 Story, Eq. § 98, and 2 Story, Eq. § 1068. Considering what are our views as to the validity of the conveyance, other points and exceptions in this case need not be examined, and especially that connected with the length of time which elapsed after the conveyance to S. Gratz, and before the filing of the present bill to avoid it.

Let the judgment below be reversed, and the case sent back to have the bill dismissed, unless the present parties agree to let others in interest come in, and to reconstruct and alter the character of the bill by amendments, so as to carry the agreement between Mrs. Phillips and Gratz into effect, and pray for the surplus or balance, if any be found due from Gratz, after paying all he has advanced, and all his expenses, and his equitable as well as legal claims on Mrs. Phillips and the estate of Joseph Simon.

Mr. Justice NELSON dissented.

Mr. Justice GRIER did not sit on the trial of this cause, being indisposed at the time.

### Order.

This cause came on to be heard on the transcript of the

record from the Circuit Court of the United States for the Eastern District of Pennsylvania, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decree of the said Circuit Court in this cause be, and the same is hereby, reversed, with costs, and that this cause be, and the same is hereby, remanded to the said Circuit Court for further proceedings to be had therein in conformity to the opinion of this court.