By the Court, Robertson, Ch. J.
The order of reference made in this case, disposed at least temporarily of the motion to vacate the order of arrest. The subsequent hearing of the motion to confirm, and the counter motion to refuse to confirm, the referee’s report, an d the refusal to confirm it, left it in the power of the court- to dispose of the original motion itself, or send it to the same or a different referee, if such order was not beyond its jurisdiction, as has been suggested. Although on notices of motion to confirm, or to refuse to confirm, a referee’s report the authority of the court may end with its refusal to confirm, nothing prevents a renewal of the motion which thus remains undisposed of, and such renewal, it would seem, might equally properly be made upon notice to that effect accompanying the notice of motion to confirm, or set aside the report. If any objection existed to the regularity of the proceedings, it seems to have been waived on the hearing at special term; and the original motion heard on the original affidavits, and- on what seems to have been assumed on both sides to have been the testimony taken before such referee.
It is not perhaps material, in this case, to pass definitively upon the question whether the court can authorize a referee to decide a motion, as well as all the issues in an action. The provision in the Code of Procedure (§ 271, subd. 3) for ordering a reference, where in the course of an action, a question of fact arises, • (otherwise than on the pleadings,) does not expressly limit such reference to determining such fact, and there is as much room for implying a power to authorize the determination of the motion which may depend on such question of fact, as there is for implying a right to give judgment upon the finding of referees upon all the issues, -when they are referred merely because a long account is involved. There is no other provision in the Code for references of interlocutory matters in what would formerly have been an equity suit, and it should therefore be . construed as giving courts authority to confer at least the *683 same powers on referees, as courts of equity formerly did as masters, which included the right to decide. There seems to be no good reason why, when the decision óf a motion turns on the existence of certain facts, such as those presented by the Code as the foundation of an order of arrest, a referee may not be trusted, to decide such motion as well as the facts on which it depends, as safely, as to decide a cause after passing on the issues of fact in it. In this ease the fact of having received money in a fiduciary capacity, determined the whole motion. If the order had been made to pass upon that fact alone, in order to obviate the objection under discussion, the legal question of what constitutes “fiduciary capacitywhich is the main one in the case, would have to be passed upon by the referee, leaving nothing further for the court to decide. All the cases in which similar references have been ordered, seem equally to involve similar intricate questions of law, or of fact and law mixed. (Pendleton v. Weed, 17 N. Y. Rep. 72. Dwight v. St. John, 25 id. 203. Barron v. Sanford, 14 How. 443. S. C. 6 Abb. 320, n. Stelle v. Palmer, 7 id. 181. Meyer v. Lent, Id. 225. Demelt v. Leonard, 19 How. 140.) The question, indeed, seems to resolve itself into one of mere form. Ho exception is necessary to the report of a referee, except when an error occurs in a determination by him on the facts. (Marshall v. Smith, 20 N. Y. Rep. 251.) By the 272d section of the' Code, a mere report of facts having only the effect of a special verdict, an adjudication must be applied for on it. (Kirby v. Fitzpatrick, 18 N. Y. Rep. 484.) A report of a referee, therefore, other than one upon all the issues, can never be confirmed except on a hearing, (Gen. Court Rule, 321,) upon or without exceptions according as the report is of facts only, or a decision upon them also. In most cases the form of the order is that the referee report the facts in his opinion, which is substantially the same thing, except that perhaps no exception- need be filed. This cannot be a question of jurisdiction, of that kind which consent cannot confer, (See Harris v. Bradshaw, 18 *684 John. 26;) and such consent is inferrable from both parties acquiescing in the order, by not appealing from it. ( Ubsdell v. Root, 3 Abb. 142.) I do not see any thing peculiar in a motion to discharge from arrest, to take.it out of the ordinary rules. The court is bound to do exactly what a referee does, when the fact of the receipt of money by the defendants in a fiduciary capacity is alone submitted to him. If material, therefore, I should be inclined to think that the order of reference was within the authority of the court.
The referee, however, by the opinion accompanying his report, appears to have been influenced in his decision, by the consideration that if the statements of the parties neutralized each other, and there were no circumstances to corroborate one more'than the other, he would be obliged to hold “ that the plaintiffs had failed to establish their case against the defendants.” Indeed the whole course of his reasoning shows that he undertook to decide the merits of the action, at least so far as regarded the ground of arrest. But he was only authorized to decide the motion ; and as he. could not be governed by different rules from those which would control the court in doing the same thing,'and it is practically immaterial whether he or the court ultimately decided it, the propriety of such rule requires investigation.
The cases are very strong to establish the doctrine that under the Code the capacity in which a defendant receives money so as to subject .him to arrest for withholding it, is part of the cause of action, and must "be proved on the trial. (Cousland v. Davis, 4 Bosw. 619. Goodrich v. Dunbar, 17 Barb. 644. Republic of Mexico v. Arrangoiz, 11 How. 1, 576. Frost v. McCargar, 14 id. 131. Giller v. Seixas, 4 Abb. 103. S. C. 6 id. 319, n. Barret v. Gracie, 34 Barb. 25.) One case, (Goodrich v. Dunbar, ubi supra,) lays great stress on the use of the phrase, “In an action,” in the first three ■ subdivisions of the 175th section of the Code, which is . omitted in the fourth, as indicating the nature of the action and not merely grounds for collateral remedies. If, there *685 fore, such capacity was part of such cause of action in this case, neither the referee nor the court had a right to try the question on affidavits. This was the law long before the Code was adopted, (Welsh v. Hill, 2 John. 100,) although it did not apply where matters in discharge were pleaded. (Jordan v. Jordan, 6 Wend. 524.) Since the Code, the rule has been continued, that in order to justify a discharge the defect of evidence must be such as to warrant a nonsuit, (Frost v. MeCarger, 14 How. 131;. Barret v. Gracie, 34 Barb. 25,) and in this court two cases at a considerable interval of time apart, (Bedell v. Sturta, 1 Bosw. 634; and Cousland v. Davis, 4 id. 621,) hold that a mere contradiction by other affidavits of that on which the arrest has been made, are not sufficient to warrant a discharge. The cases enumerated in the Code, in which a right of arrest is given, are mere exceptions to the general abolition of imprisonment in civil cases, and not part of á new provision. The referee in this case, therefore, however satisfied he might be on all the evidence, that the money due from the defendants was not received in a fiduciary capacity, had no right to discharge them.
Assuming, however, the rule to be otherwise, and that in order to hold the defendants to bail, the evidence must preponderate in favor of the plaintiffs, the ultimate admission of the defendant Wade, on his examination before the referee, that they had originally received the notes in question as brokers to sell them, (notwithstanding he had denied it in his affidavit on which the motion was made,) entirely shifted the burden of proof. It rebutted whatever favorable conclusion might be drawn from the mere possession of the notes; the presumption being that the relation of the parties remained the same throughout, as principal and agent, unless there was proof that it was changed into that of buyer and seller. The plaintiff Swift utterly denied that any such change ever took place. [The court, after an examination of the evidence, to show that such denial was corroborated by circumstances, proceeded.]
*686 Opposed to the testimony of Swift, so corroborated by circumstances, is that of the defendant Wade. [The court, after a critical analysis of Wade’s testimony, proceeded.] So much improbability and uncertainty, and such failure to explain suspicious circumstances and discrepancies, detract greatly from the reliability of the statement of the defendant Wade, and it must yield to that of the plaintiff Swift, when weighed against it. The referee was, therefore, bound to have decided in favor of the plaintiffs, and his report was properly set aside.
Whether an oral permission to a vendee to retain possession of choses in action, (previously in his hands for sale as an agent,) as part of an oral contract by the owner to sell them to him, is a delivery of them within the statute of frauds, it is not' necessary to decide. Such a sale would at least operate to revoke any power of selling previously given to such vendee as an agent, so as to destroy any previous fiduciary relation between him and the vendor, and leave the plaintiffs to whatever other remedy they might have.
The order appealed from must, therefore, be affirmed, with $10 costs.
Barbour, J.
This is an appeal from an order of a judge of this court denying the defendants’ motion to set aside an order of arrest previously granted under the 179th section of the Code, in an action for refusing to pay over about $45,000, allowed in the complaint to have been received by the defendants in a fiduciary capacity.
The printed papers before us show that after the order of arrest was granted, the defendant applied, on affidavits, to set it aside; that the learned justice, before whom the same was brought on- to be heard at special term, made an order referring such motion to a referee, “to hear and determine the sameand further directing that such referee “ report his decision, and that after confirmation thereof, *687 an order be entered in conformity therewith; that the referee subsequently made his report, in which, after reciting that he had read and heard all the testimony,- both written and oral, including affidavits and the testimony of certain witnesses who were produced and examined, he decided and determined that the order of arrest ought to be discharged, and thereupon proceeded to, and did, in terms, make an order directing the said order of arrest to ■ be discharged by an order to be entered upon his .report, with |1'60 costs, including his fees; that the plaintiffs’ counsel made a motion at special term, upon the pleadings, affidavits, proceedings before the referee and exceptions, to vacate or modify the report of the referee, and to deny the defendants’ motion to discharge them from arrest; and that the judge, before whom such last mentioned motion was made, thereupon ordered that the exceptions be sustained ; that such report be set aside ; and that the motion to discharge the defendants from arrest be denied. It is from this last mentioned order that this appeal is taken. It purports on its face to be made upon the complaint, certain affidavits, the order of reference, the minutes of the referee, and his report, with the exceptions thereto.
The printed case before the court on appeal contains, (1) the original warrant of arrest, with- the affidavit on which the same was founded; (2) the complaint; (3) notiqe of motion to vacate the order of arrest, with the affidavits on which such motion was made; (4) affidavits read on the part of the plaintiffs in opposition; (5) the order made at special term, referring that motion to a referee to hear and determine; (6) opinion of the referee; (7) report of referee, containing, after recitals, his findings of fact and conclusions of law, followed by his order directing the order of arrest to be discharged; (8) the plaintiffs’ exceptions to the report; (9) notice of motion to vacate or modify the referee’s report, and to deny the motion of the defendants to vacate the order of arrest; (10) the order appealed from.
*688 Intermediate the order of reference and the opinion of the referee, after the title of the cause, follow fifty-three pages of questions and answers, with the- names of seven persons making such answers. The case does not state that those persons, or any of them, were examined on the reference in question, nor, except in a few instances, on whose behalf, or by or before whom or where they were examined; nor does it show that any of them were sworn before the referee or any officer authorized to administer oaths; nor, indeed, is there in the case any statement tending to show that these fifty-three pages of questions and answers were in fact, examinations of witnesses before the referee on the reference in this action, or that the same constituted, or were contained in the minutes of the referee. Upon the argument at general term, however, the counsel, on both sides, assumed that such questions and answers constituted the oral testimony which was taken before the referee, and reconsidered, on the exceptions, at special term, and, both upon the argument and in their printed points, referred, in numerous instances, to the same, as evidence taken before the referee upon the motion. Unquestionably, the case was irregular so far as concerned those fifty-three pages, because of the omissions before, mentioned, and the court might well have refused to hear the appeal, for that reason, until an amendment should be made. But that was not done, and the parties had a right, (by their counsel,) to waive such irregularity, as they did. I see no reason, therefore, why those questions and answers ought not to be considered as a portion of the evidence before the court at special term, upon the making of the order appealed from.
The question, then, is whether the evidence contained' in the affidavits and those questions and answers, was or was not sufficient to warrant the decision of the learned justice.
The complaint avers, and the affidavit of one of the plaintiffs states, that, on or prior to the 10th of March, *689 1865, the latter placed-certain promissory notes, amounting to about $45,000, which had been made by other parties, and belonged to the plaintiffs, in the hands of the defendants, who were brokers, for sale, and that they sold the same, and refused to pay over the proceeds when demanded. The defendants do not deny that the notes were sold and that they refused to pay over the proceeds, but they claim that the notes in question were purchased by them from the plaintiffs at a discount of nine and one fourth per cent; that they thereupon credited the purchase price to the latter, and rendered to them an account thereof, and undertook and agreed to pay interest thereon to them.
The affidavit of one of the defendants, (Wade,) denies that the plaintiffs, or either of them, ever employed the defendants to sell the notes in question for them, and further avers that “ the defendants never bore any relation to the plaintiffs in respect to the said notes, other than purchasers thereof, and debtors, holding the consideration of the sale to the plaintiffs’ credit,-upon interest.” This, clearly, is an absolute and unqualified denial of the allegation contained in the complaint and the affidavit of one of the plaintiffs, that the notes were delivered to the defendants, as brokers, to be sold by them for the plaintiffs.
In the same affidavit, however, the defendant says that some days prior to the 10th of March, 1865, one of the plaintiffs placed in his hands eight of the nine notes in' question; that when such notes were so handed to the defendants, the said plaintiff requested them “ to manage them if they got an opportunity, meaning thereby, to procure the negotiation thereof,” and that subsequently, the plaintiffs sent in the remaining ninth note. The same defendant, on his examination before the referee, (assuming the questions and answers before referred to, to be such examination,) stated that, (I quote his words,) “ the notes were handed to me for sale, by H. H. Swift,” (one of the plaintiffs,) “ and, after being in my possession some time, were bought by me from him.” He subsequently stated *690 that the “ some time ” meant two or three weeks, and that he had the notes in his possession, subject to the order of W. Swift, until he bought them. The context shows that where he uses the word “me,” or “I,” he speaks of his firm. The contradiction between these statements of the defendant and those first above referred to are so apparent as to require no- comment. They cannot, both, be true; and the conclusion'is irresistible, either that the defendant has willfully sworn to a falsehood, or has testified so carelessly and recklessly, in regard to a most material question, that his evidence' should be scrutinized with great care.
The only evidence given on the part of the defendants to prove the purchase by them of the notes in question, except such as may properly be inferred from the presentation of an account, of which I will hereafter .speak, was the testimony of the same person who thus contradicts himself; his partner stating that he had no personal knowledge edge upon the subject,
[The learned judge, after scrutinizing the testimony of Wade, and facts claimed to corroborate him, added.] The testimony of the defendant Wade in regard to the alleged purchase of the notes by his firm, is not only fully contradicted by the affidavit of the plaintiff, with whom he claims to have made the agreement, but by the .defendants’ own books. [The learned judge then proceeded to analyze the the entries in the defendants’ books in reference to such supposed sale.] hior, I think, did the defendants establish the fact that the proceeds of such notes were loaned to them by the plaintiffs, or that the latter agreed to permit such proceeds to remain jn the hands of the former, upon interest. For the reasons above stated, the testimony of the defendant Wade upon the subject, need not, therefore, be considered. Besides him, two witnesses were examined upon that subject, on the part of the defendants. [The learned judge after examining the testimony of. such witnesses as to the entries’on the books of the defendants, and such loan, proceeded.] If the statement of the last *691 witness (Tobias) to the plaintiff", that the amount of the. account had been placed to the credit of.the latter, had been, true, and such plaintiff had expressly assented to that disposition of the fund, it may be that it could no longer be considered as held by the defendants in a fiduciary capacity. But the statement so made to the plaintiff, that such credit had been given on the books of the defendant, was wholly untrue, as no credit whatever, upon that account, was made upon the books until some twenty days thereafter; and, besides, there is no evidence in the case which tends to prove the assent of the plaintiff to such statement in régard to the credit given his firm on the defendants’ books, whether true or false.
■ It is true, if the defendants’ witnesses are to be credited, that the account showing the proceeds of the notes also contained a credit for interest; that the plaintiff' was particularly informed, that such interest was included in the account, up to its date; and that he assented to it by saying, “all right.” But that by no means changed the relation which existed between the parties as broker and principal. There was nothing to be done in futuro; nor can it be considered an agreement between the parties, that such proceeds had gone, or should go, into ■ their general account. The evidence shows, that the defendants had actually used the money which they' had received for the notes, in their business; and they were, therefore, equitably, if not legally, bound to pay the plaintiffs, interest for such use, to the same extent as other trustees, using trust funds, would bé. The defendants, therefore, wholly failed, upon their motion to’ vacate the order of arrest, to contradict, in any essential particular, the charges contained in the affidavit upon which such original order was obtained, to the effect that the moneys in question were received, and still retained, by the defendants, in a fiduciary capacity For that reason, the order appealed from was properly made and should be confirmed. I may add. that the same result, and with still *692 .stronger reason, must be reached, if that portion of the case which Avas treated upon the argument as oral testimony taken before the referee, is wholly disregarded.
I have thus, with great care, examined and considered the voluminous testimony before us, for the purpose of ascertaining, whether that of the plaintiffs of the defendants touching the material charge, which is the subject of this motion, preponderated; for, I cannot subscribe to the doctrine laid down, in this court, in Bedell v. Sturta, (1 Bosw. 634,) and Cousland v. Davis, (4 id. 620,) and when a proper occasion arises at general term, shall be prepared to suggest to my brethren the propriety of reconsidering the decisions there, in this regard. I can see no reason now, whatever there may have been in former times, for holding that a defendant who has been committed to prison upon the -plaintiff’s affidavit, containing a charge like this, should be kept there, notwithstanding such charge is clearly and wholly denied by a person of equal knowledge and like character. It seems to me contrary to every sound principle of equity and justice, to permit a plaintiff to have that advantage, • merely because the law has allowed him to make the first oath. If a plaintiff procures the arrest of the defendant upon an ex parte charge, Avhen the question as to its truth is brought before the court on motion of the latter,.the plaintiff ought to be required to prove such charge to the satisfaction of the court, according to the well known rules of evidence in other cases. Certainly, if he cannot do that upon a motion to discharge the prisoner, every court must find it difficult to believe that he can do so upon the trial of his action.
I am compelled, though with great diffidence, to differ from the learned chief justice in regard to the form of the order which ought to be made. It appears to me that the court had no jurisdictional power to make the order of reference, and, therefore, that the findings and decision of the referee were wholly extra judicial. Although the *693 testimony taken before him. might be read as evidence,' (as it was, without objection,) before the court at special term, on the defendants’ motion there, to vacate the order of arrest, precisely as any paper, pertinent to the issue might be so read by the tacit consent of counsel, I know of no authority in the court to delegate to a referee its power to commit a man to jail, or release him therefrom or, even to take testimony and report the same, with his opinion, without the consent of the parties, on a question like this, except such as is conferred upon it by the 271st section of the Code. It does not appear that such consent was given, and the matter referred was a question of fact arising upon the pleadings themselves, and, therefore, did not fall within the third subdivision of that section. It is possible that the parties, by proceeding under that order, waived all objections to the reading of the testimony so taken, but they could not waive the question as to the jurisdiction of the referee to determine the matter. I think, therefore,' with great deference, that it will be most proper .to" direct an order confirming the decision at special term, as it stands.